UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

  v.                                  Case No. 10-CR-039

CHRISTOPHER A. JOHNS,

    Defendant.

# THE UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM

The United States of America, by and through United States Attorney James L. Santelle and Assistant United States Attorney Gordon P. Giampietro, respectfully submits this Sentencing Memorandum in anticipation of defendant Christopher A. Johns's ("Johns") July 12, 2011 sentencing hearing. The purpose of this Memorandum is to provide legal authority for the Chapter 3 adjustments set forth in the Presentence Investigation Report ("PSR")(¶¶ 31-32 (vulnerable victim and special skill/abuse of position of trust), and to re-state the United States's objection (PSR ¶¶ 63-64, 78, 81-81) to Johns's failure to provide information regarding marital finances. The United States reserves its "reasonable sentence" arguments (18 U.S.C. Section 3553(a)) for the July 12th hearing.

-1-

## ARGUMENT

I.   Vulnerable Victim - U.S.S.G. § 3A1.1(b)(1)

Johns has objected to the two-level vulnerable victim adjustment set forth in PSR ¶ 31. In his Sentencing Memorandum (Doc. No. 88), Johns repeats the objection and states that "the Seventh Circuit has never apparently decided that 'financial distress' alone, makes a person 'particularly susceptible to the criminal conduct.'" Sent. Memo. at p. 17. However, in *United States v. Grimes*, 173 F.3d 634, 637 (7th Cir. 2005), the Seventh Circuit reasoned that:

> Defrauders who direct their activities not against banks, insurance companies, or large investors, but instead against people who because of mental <u>or</u> educational deficiencies <u>or financial desperation</u> are suckers for offers of easy money, do not need to take as many precautions against the discovery of their scheme by the intended victims and in any event are less likely to be prosecuted, because the victims are less likely to know that they have been defrauded or if they know to have the know-how and initiative required to press a criminal complaint or bring a civil suit. (emphasis supplied)

The Seventh Circuit's reasoning in *Grimes* accords with the disjunctive structure of U.S.S.G. § 3A1.1, which does not require that the victim in financial distress suffer some *additional* vulnerability. Because of their desperate financial situation, Johns saw the victims as easy marks who would not notice or challenge his "equity rising" scheme. Unfortunately for Johns, the Ten Hoves were in bankruptcy and the Chapter 13 trustee alerted the Ten Hoves' attorney, Michael J. Watton, to the fraudulent Fledderman mortgage.

-2-

For these reasons, paragraph 31 is correct as written and a two-level adjustment under U.S.S.G. § 3A1.1(b)(1) is appropriate.

II.   Abuse of Trust / Special Skill - U.S.S.G. § 3B1.3

Johns has also objected to the two-level adjustment for abuse of position of trust/use of special skill set forth in PSR ¶ 32. Johns repeats the objection in his Sentencing Memorandum. Sent. Memo. at p. 19, citing *United States v. Fuchs*, 635 F.3d 929 (7th Cir. 2011). But *Fuchs* holds only that, at least on the facts of that case, the defendant did not hold a position of trust with respect to *lenders*. The victims here were the homeowners facing imminent foreclosure.

Johns held a position of private trust with respect to the homeowner-sellers. He offered to "rescue" them from foreclosure and, at least with respect to the Ten Hoves and Michelle Coleman, negotiated the purchase price with Allen Banks, his co-defendant, for the purpose of rinsing their equity. So, unlike in *Fuchs*, the victims are the homeowner-sellers; not the lenders.

The PSR Addendum (page 5) cites *United States v. Wright*, 496 F.3d 371 (5th Cir. 2007) in support of the adjustment. Unfortunately, *Wright*, like *Fuchs,* analyzes the U.S.S.G. § 3B1.3 issue in the context of victim-lenders. The precise legal question is whether Johns was in a position of private trust with the victim-homeowners, or utilized a special skill in the commission of the offense.

A more analogous case is *United States v. Fiorito*, 2010 WL 1507645, *36

-3-

(D.Minn. 2010), in which the district judge reasoned that:

> Given the importance of selling or refinancing a house, and given the complexity of real-estate transactions, the Court believes that a home buyer-particularly an unsophisticated one-is likely to place a great deal of trust in real-estate professionals. But the Court need not decide whether mortgage brokers, in general, occupy a position of trust, because the evidence in this case established that Fiorito went to great lengths to place himself in a position of trust with respect to his victims. Fiorito required many of his victims to sign power-of-attorney forms that authorized him to act on their behalf. Fiorito hid from many of his victims the details of the transactions that he arranged and directed victims to sign documents without first reviewing them. Fiorito's entire scheme depended on gaining his victims' trust, and transactions unraveled once the victims realized (after the fact) that Fiorito could not be trusted.

While it is true that the victims in *Fiorito* were home-buyers, rather than home-sellers, the analysis is the same. The Ten Hoves and Michelle Coleman were unsophisticated in matters of real estate/finances and both relied on Johns to negotiate the sale transactions with Banks. Like the defendant in *Fiorito*, Johns hide from the Ten Hoves the significance of a document that he presented for their signature; specifically, the fake Fledderman mortgage.

Further, a two-level adjustment under U.S.S.G. § 3B1.3 is also appropriate for Johns's use of a special skill to carry out the offense. Section 3B1.3 provides for a two-level increase if the defendant used a special skill "in a manner that significantly facilitated the commission or concealment of the offense." The Fourth Circuit in *United States v. Longwell*, 2011 WL 327310 (4th Cir. 2011) found that a

-4-

mortgage broker possesses the type of special skill that supports a two-level adjustment.

> While mortgage brokers may not endure the same level of training as a doctor, pilot, or lawyer, they certainly possess a skill not possessed by members of the general public which is obtained through training and licensing. Thus, the skill possessed by a mortgage broker qualifies as a special skill for the purposes of U.S.S.G. § 3B1.3.

*Id*. at **7.

In this case, Johns's special skill as a mortgage broker was essential to the equity rinsing scheme, and his experience in real estate transactions "significantly facilitated" the commission of the offense. Indeed, Johns's special skill enabled him to create the fake Fledderman mortgage.

For these reasons, paragraph 32 is correct as written and a two-level adjustment under U.S.S.G. § 3B1.3 is appropriate.

III.    Objection to PSR ¶¶ 63-64, 78, 81-82 - financial information

Johns and his wife, Antoi Erving, have not been forthcoming about their jointly-held assets. For this reason, the United States objected to paragraphs 63-64, 78, 81-82 of the PSR. The PSR Addendum confirms what is the PSR: that Johns and his wife take the position that they consider themselves separated and no further information need be provided about her assets. PSR Addendum, pages 1-2. Similarly, Johns continues to claim the existence of three mortgages on his 4708 North 44th Street property, but has not provided any evidence to support that

-5-

assertion.

Pursuant to 18 U.S.C. § 3664(d)(3), a defendant is required to file with the probation officer "an affidavit fully describing the financial resources of the defendant. . . ." Pursuant to Section (f)(2)(A), after determining the amount of restitution owed, a court must consider the financial resources and other assets of the defendant, "including whether any of those assets are jointly controlled." Further, pursuant to 18 U.S.C. § 3613(a) and (f), orders of restitution may be enforced in accordance with the laws of the state of Wisconsin, which is a community property state.

Johns's failure to provide information about his wife's assets that, under Wisconsin law are community property from which fines and restitution can be paid, might be construed as obstructive conduct under U.S.S.G. § 3C1.1.

Respectfully submitted this 8th day of July 2011.

          JAMES L. SANTELLE
          United States Attorney
By:

          s/Gordon P. Giampietro
          Assistant United States Attorney
          D.C. Bar Number: 446600
          Office of the United States Attorney
          Eastern District of Wisconsin
          517 East Wisconsin Avenue, Room 530
          Milwaukee, Wisconsin 53202
          Telephone: (414) 297-1083
          Fax: (414) 297-1738
          E-Mail: gordon.giampietro@usdoj.gov